_____ FILED        _____ ENTERED
_____ LOGGED     _____ RECEIVED

(TW) RRR/EBP: USAO 2019R00419

APR – 5 2021

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY _____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | **CASE NO.** GLS-21-0957 |
| | * | |
| OLUWASEYI AKINYEMI, | * | **FILED UNDER SEAL** |
| | * | |
| Defendant | * | |
| | * | |

*******

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Aaron Klein, Special Agent with Homeland Security Investigations ("HSI"), being duly sworn and deposed, state as follows:

#### Introduction

1.      As a Special Agent with HSI, your affiant is an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2.      Your affiant has been a Special Agent with HSI since September 2008.  From 2009 to 2013, your affiant was assigned to the Document and Benefit Fraud Task Force in Baltimore, Maryland, where your affiant investigated a variety of criminal organizations engaged in various fraud schemes.   Your affiant has received instruction and training, along with investigative experience, in financial institution fraud, immigration fraud, mail fraud, identity theft, and money laundering.  In the course of conducting or participating in criminal investigations, your affiant has been involved in interviewing and debriefing witnesses and informants; conducting physical surveillance; analyzing bank records and other financial documents; analyzing telephone records;

1

collecting and analyzing evidence; and preparing and executing search warrants, including search warrants for email accounts.

3.      Your affiant has set forth only those facts that your affiant believes are necessary to establish probable cause. Your affiant has not, however, excluded any information known that would defeat a determination of probable cause. The information contained in this Affidavit is based on your affiant's personal knowledge, review of documents and other evidence, and conversations with other law enforcement officers and other individuals.

4.      Based on the information below, your affiant respectfully submits that there is probable cause that **OLUWASEYI AKINYEMI, a/k/a "Paddy Linkin," a/k/a "Joseph Kadin" ("AKINYEMI")**, committed mail fraud, attempted mail fraud, and mail and wire fraud conspiracy, in violation of 18 U.S.C. §§ 1341 and 1349 from approximately July 10, 2018, to April 29, 2019.

## Probable Cause

### I.      Introduction

5.      During the course of this investigation, your affiant learned about the methods utilized by the Akinyemi Fraud Group ("AFG"), a group of Nigerian nationals that are engaged in a social media-based advanced fee fraud scheme. Members of the AFG identify and target elderly individuals ("the victims") utilizing the social media platform Facebook. The AFG creates fictitious Facebook accounts ("the Originators") and uses these to send messages to the victims. In some cases, the AFG will create fictitious Facebook accounts that impersonate accounts of actual friends of the victims. The victims therefore believe they are communicating with individuals they know and trust. The Originators will then vouch for a scheme through which the victim will receive financial rewards. The schemes presented included government programs that

offered financial benefits to qualifying individuals.  Once the victims have demonstrated interest, the Originators—operating under the established trust of the fictitious friend—will utilize a new account or persona ("the Closers") to engage in the fraud scheme.  In some instances, the Closers will represent themselves as agents of both real and fictitious government agencies and offer the victims fictitious financial rewards, if the victims first send money for associated taxes and fees. The victims send their money to individuals in Maryland and elsewhere, who then deliver said monies to co-conspirators in Nigeria.  This money, either in the form of cash, money orders, or gift cards, is usually sent via the United States Postal Service ("USPS"), Federal Express ("FedEx"), and the United Parcel Service ("UPS").

6.     **AKINYEMI** is one of the individuals in Maryland to whom victims sent their money or gift cards.  **AKINYEMI** resides in an apartment unit in Landover, Maryland ("Akinyemi's Current Residence").   On April 16, 2019, law enforcement contacted the management for the apartment complex in Landover, Maryland.  Law enforcement was informed that **AKINYEMI** and a close relative were the listed occupants of Akinyemi's Current Residence. Management officials also stated that packages were delivered to **AKINYEMI** and his close relative on such a frequent basis that the **AKINYEMI** and his close relative were provided a copy of the key to the package area of the leasing office.

7.     As further described below, at least eleven victims have been defrauded in the amount of $474,145.07[1] through the AFG scheme:

---
[1] All dates and amounts are approximations. The words "on or about" and "approximately" are omitted for brevity.

| Victim | State | Loss Amount |
|--------|-------|-------------|
| 1 | Texas | $70,000.00 |
| 2 | Pennsylvania | $2,550.00 |
| 4 | Indiana | $50,000.00 |
| 6 | Pennsylvania | $80,000.00 |
| 7 | Arizona | $10,000.00 |
| 8 | Ohio | $2,000.00 |
| 9 | South Carolina | $4,800.00 |
| 10 | New York | $100,000.00 |
| 11 | Arizona | $30,000.00 |
| 12 | Texas | $28,000.00 |
| 13 | North Carolina | $96,795.07 |
| | Total: | *$474,145.07* |

## II.   Victim 1

8.      On April 16, 2019, members of the Prince George's County Police Department assigned to the Narcotics Enforcement Division, Interdiction Squad intercepted a UPS package addressed to "Paddy Linkin" at Akinyemi's Current Residence.   The package was sent by Victim 1 in Texas.   A canine scan was conducted on the package, which resulted in a positive indication that the package contained an odor of a controlled dangerous substance.   Pursuant to a search warrant, law enforcement searched the package and discovered $30,000 in bulk United States currency.   The currency was wrapped in money bands and concealed inside two stuffed animal bears.   The money was seized by law enforcement officers.

9.      On August 28, 2019, law enforcement interviewed Victim 1 and her daughter, who provided the following information.   Victim 1 received an application on Facebook to apply to a federal government grant program.   The sender had a profile picture of an individual whom Victim 1 was friends with on Facebook.   The application was accompanied by a message from the

4

person—whom Victim 1 believed was a friend—vouching for the program. Victim 1 was subsequently contacted by a Closer who informed Victim 1 that Victim 1 was approved for $100,000 in grant funds with a congratulatory electronic certificate bearing her name. However, in order to receive the grant funds, Victim 1 was informed that they needed to pay taxes. After Victim 1 sent the first package of money to Akinyemi's Current Residence, Victim 1 stated that she immediately received two more electronic "certificates" from the Closer. Victim 1 received a "Certificate of Completion" bearing the Internal Revenue Service seal stating that it was from the "Federal and State Tax Institutes." Victim 1 also received a certificate with a U.S. flag on it with the words "Federal Grants" next to it which included Victim 1's full name and the text: "Federal Government Grants for the sum of $5,000,000." Victim 1 further received a message stating that the Central Intelligence Agency was going to confiscate the grant money unless Victim 1 agreed to send more money to cover the taxes on the awarded grant. Victim 1 was provided detailed instructions from the Closer regarding how to place money inside the stuffed bears and fill and seal the bears.

10.     Victim 1 provided bank statements, credit union loan receipts, and FedEx and UPS parcel receipts pertaining to the sums that were sent to Akinyemi's Current Residence. Victim 1 sent six parcels in total on separate dates in April 2019 that contained cash or monetary instruments. The first package sent on April 10, 2019, contained $1,000. The package sent on April 11, 2019, contained $3,000. The package sent on April 15, 2019, contained $10,000. The package sent on April 16, 2019, was seized by law enforcement and contained $30,000. The package sent on April 29, 2019, contained $20,000. The package sent on April 30, 2019, contained $10,000. The parcels were sent to "Paddy Linkin" at Akinyemi's Current Residence, as well as to an address located in Midland, Texas.

11.     Your affiant reviewed copies of four separate parcel mailing labels provided by Victim 1's daughter that were addressed to "Paddy Linkin" at Akinyemi's Current Residence. Three of these labels were for FedEx parcels that were created on April 11, April 12, and April 17, 2019. All three parcels were scheduled for overnight delivery. The fourth label, for a UPS package, was the label affixed to the parcel intercepted by law enforcement on April 16, 2019.

12.     In total, according to Victim 1's daughter, Victim 1 sent approximately $70,000 to $80,000 to "Paddy Linkin." In order to send the funds, Victim 1 withdrew funds from a retirement account and also obtained a bank loan.

**III.   Victim 2**

13.     On April 25, 2019, pursuant to a search warrant, law enforcement seized $1,500 in U.S. currency from a package sent to "Paddy Linkin" at Akinyemi's Current Residence by Victim 2, an individual in Pennsylvania.

14.     Law enforcement interviewed Victim 2, who stated that they sent several packages containing cash or monetary instruments to individuals in Maryland. Victim 2 stated that they were contacted on Facebook by an individual they believed to be a known friend, who your affiant believes was an Originator. The Originator told Victim 2 that they had seen Victim 2's name on a winner's list for the Publisher's Clearing House when they (the Originator masquerading as Victim 2's friend) received their winnings from the Publisher's Clearing House. The following screenshots capture the conversation between the Originator and Victim 2 over Facebook Messenger:



Good to hear from you I'm doing pretty good and so happy now because my life has really changed for better and have something confidential to share with you guess what ?

APR 11, 2019, 2:32 AM

I was just wondering if you have heard ongoing news about the Publishers Clearing House – (PCH) yet?

APR 11, 2019, 7:48 AM

I was able to get some cash from them but i saw your name among the winner list when they came to deliver my winning money did you actually get yours ?

No I could us some. When did U get it?

When Victim 2 stated they had not been contacted by the Publisher's Clearing House, the Originator stated that they had received $80,000 and that they would forward Victim 2 the contact information for the Publisher's Clearing House's "online coordinator"—a Maxwell Paul:





15.    After receiving the recommendation from someone whom Victim 2 believed was a friend, a Maxwell Paul—a Closer from the AFG—contacted Victim 2 and proceeded to convince Victim 2 that they too were entitled to winnings.    The Closer told Victim 2 that they had won $100,000 from Publisher's Clearing House.  The Closer informed Victim 2 that they had to pay a "tax fee" and "shipping fee" of $550 in order to receive the winnings.  Eventually, the Closer stated that the winnings could not be delivered to Victim 2 without Victim 2 providing an additional $2,000, due to IRS issues:



**Maxwell Paul**

Using Messenger without Facebook
Logged in using a phone number from United States

APR 16, 2019, 12:08 PM

Maxwell is waving at you!

Hello . My name is AGENT Maxwell Paul , I am the 2019 (PCH) PUBLISHERS CLEARING HOUSE department online claim agent Can you

Type a message..



**Maxwell Paul**

Alright Dear Winner. Your winning money is $100,000.00 and it shows that you are qualify to receive the money .Your claim has been confirmed and the money will be delivered to you in next 12hours in check.You are to pay for your TAX FEE AND SHIPPING FEE

That's fine with me.

Type a message..



**Maxwell Paul**

That's fine with me.

Your tax fee and shipping fee is $550.00 and once we confirmed your payment now your Grant money will deliver to you in the next 12 hours .

Dear winner kindly let me know if you are ready to make the payment now so that I can forward the FedEx cashier information

Type a message..



**Maxwell Paul**

I have been honest with you just that you don't want to understand me and we just $500 dollars to just get your winning money out from the IRS cause the board have help you with the last payment you are trying to send then okay?

9



16.     When Victim 2 expressed doubts regarding the legitimacy of the Closer's promises, the Closer began to provide assurances to Victim 2.   Such assurances included the Closer reminding Victim 2 of the success that their "friend" (the Originator) had with the program:

  

While the Closer was attempting to convince Victim 2 to continue sending money, including by telling Victim 2 that this was not a scam as "Maxwell Paul" was a religious individual like Victim 2, at one point in the conversation, the Originator sent messages to Victim 2 to also provide

assurance that the program was legitimate.

17.     Subsequently, the Closer requested that Victim 2 send cash to Akinyemi's Current

Residence:



18.     The first package Victim 2 sent to Akinyemi's Current Residence contained a check

in the amount of $1,500.  Pursuant to a search warrant issued, your affiant later observed in

**AKINYEMI**'s cellular phone a photograph depicting a check in the amount of $1,500 that was

from Victim 2 and made payable to "Paddy Linkin."  The check was placed next to a letter from

Victim 2 that read: "This is a check for my winnings of 100,000 cash money":



The Closer informed Victim 2 that they would not accept a check and wanted Victim 2 to send cash. Victim 2 notified their bank and had them cancel the check. The next item Victim 2 sent was $1,500 in cash, which was intercepted and seized by law enforcement, as discussed above.

19.     Based on the above, your affiant believes that **AKINYEMI** had knowledge that the money he was receiving was obtained through fraudulent means. **AKINYEMI** is not employed by any legitimate organization engaged in the business of distributing lottery winnings.

20.     Separately, the Closer encouraged Victim 2 to send multiple gift cards to the AFG, which were Google Play and Apple iTunes cards. Victim 2 would scratch the back of the cards and send the card number information to the individuals through Facebook Messenger. In total, Victim 2 stated that they sent $5,850 worth of funds, and after recovering some of the funds, lost a total of $2,550 to the scheme.

21.     The Closer also asked Victim 2 for their Facebook login and password, which Victim 2 provided, believing it was necessary to verify their identify and claim their prize:



22.    In light of the scheme perpetuated by the AFG, your affiant believes it is likely that the AFG requested Victim 2's credentials in order to log in as Victim 2 and vouch for the same fraud scheme to someone in Victim 2's contact list.

**IV.    <u>Victim 3</u>**

23.    On April 26, 2019, pursuant to a search warrant, law enforcement seized $9,720 in U.S. currency from a package Victim 3 sent to "Paddy Linkin" at Akinyemi's Current Residence.

24.    Your affiant interviewed Victim 3.  Victim 3 sent $9,720 to Akinyemi's Current Residence, based on instructions from a member of the AFG.  Victim 3 stated that she received a check in the mail that she was instructed to cash.  Victim 3 cashed the check into her bank account and sent the currency to Akinyemi's Current Residence.  Your affiant has reviewed a copy of Victim 3's bank statement and confirmed the deposit of $9,770 on April 23, 2019.  On April 24, 2019, Victim 3 withdrew $9,720 from their account and sent that money to Akinyemi's Current Residence, which was subsequently intercepted by law enforcement.  Your affiant reviewed a copy of the check sent to Victim 3, which was a check issued by Company 1 located in Tacoma, Washington.  Your affiant spoke with a representative of Company 1, who informed your affiant

that Victim 1 was the victim of a fraud scheme that caused several unauthorized fraudulent checks to be generated and issued on behalf of Company 1.

      25.    Your affiant later reviewed a WhatsApp conversation on **AKINYEMI**'s phone between **AKINYEMI** and **Co-Conspirator A** from April 23, 2019:

| | |
|---|---|
| **AKINYEMI:** | Naso |
| **Co-Conspirator A**: | Who is this please |
| **AKINYEMI:** | Bam you<br>Solid material<br>Nah me yakmud<br>Shakur |
| **Co-Conspirator A**: | Correct bros<br>I sense with the NASO |
| **AKINYEMI:** | Abi an<br>Abi na |
| **Co-Conspirator A**: | Bros na this number you dey use now ni I don message you in other number I drop update there |
| **AKINYEMI:** | I gat you |
| **Co-Conspirator A**: | [Akinyemi's Current Residence]<br>$9,770 dollars |
| **AKINYEMI:** | Wow |
| **Co-Conspirator A**: | Naso bros |
| **AKINYEMI:** | We go scale through |

      26.    Based on my training and experience, and my knowledge of this investigation, your affiant believes that during this WhatsApp conversation, **AKINYEMI** was contacting another member of the AFG to discuss the delivery of Victim 3's money. After initial greetings, **Co-Conspirator A** sent a message to **AKINYEMI** informing **AKINYEMI** of a package that was

being sent to **AKINYEMI**. The message contained **AKINYEMI**'s address, his alias ("Paddy Linkin"), a FedEx tracking number, and a dollar amount. The tracking number is associated with the parcel containing $9,720 that was sent by Victim 3 and intercepted by law enforcement. In response, **AKINYEMI** wrote, "We go scale through." Based on your affiant's knowledge that "scale" is a known reference to a specific amount of money that someone receives for performing an action, your affiant believes that **AKINYEMI** informed **Co-Conspirator A** that **AKINYEMI** will be deducting his usual amount from the money to be received via FedEx, before sending the remaining balance to another member of the AFG.

27.    The conversation between **AKINYEMI** and **Co-Conspirator A** continued:

| | |
|---|---|
| **Co-Conspirator A:** | This one go deliver by Friday and first one na tomorrow |
| **AKINYEMI:** | Yea<br>Sure<br>That means I go send the initial one I borrowed yesterday<br>You understand<br>I knew I will pay it before next week |
| **Co-Conspirator A:** | Okay I just tell the guy to give me time say there is no Naira down to send it but as na new<br>guy he just say OK<br>Yes I know it will be pay before next week bros |
| **AKINYEMI:** | Yea<br>I go send am this Friday or Saturday |
| **Co-Conspirator A:** | Okay bros I trus |

28.    Your affiant believes that **AKINYEMI** and **Co-Conspirator A** were discussing another parcel and how **AKINYEMI** will be forwarding the money he receives in said parcels to other members of the AFG. When **AKINYEMI** stated, "I knew I will pay it before next week,"

your affiant believes that **AKINYEMI** was confirming his role in the AFG as an individual who receives fraudulently obtained currency and then sends the money to Nigeria after taking his cut. When **Co-Conspirator A** wrote, "Okay I just tell the guy to give me time say there is no Naira down to send it but as na new," your affiant believes that there was a delay in receiving the packages and in turn, **AKINYEMI** would be delayed in forwarding money to the next member of the AFG. Your affiant believes that **Co-Conspirator A** is coaching **AKINYEMI** on how to justify the delay. As previously noted, **AKINYEMI** did not receive Victim 3's parcel, as it was intercepted by law enforcement.

V. **Victim 4**

29.    On April 29, 2019, pursuant to a search warrant, law enforcement seized $500 in U.S. currency from a package sent from Victim 4, who resides in Indiana, to "Paddy Linkin" at Akinyemi's Current Residence.

30.    Law enforcement interviewed Victim 4, who stated that they received a message from someone they believed to be a high school friend regarding a "Strengthening Community Fund." This person—who your affiant believes to be an Originator—told Victim 4 that they received money from the fund and that there were different amounts for which a person could apply. The Originator provided Victim 4 the contact information for a fictitious "Agent"—an Agent Scott—representing the Fund. Victim 4 then messaged Agent Scott expressing their desire to apply for the fund.

31.    On May 24, 2018, Victim 4 messaged Agent Scott seeking information regarding the Fund. The Closer (masquerading as Agent Scott) stated that they were from the "Strengthening Communities Fund 2018" and asked Victim 4 if they were ready to apply. When Victim 4 communicated their desire to do so, the Closer sought biographical information from Victim 4,

including their monthly income.  Victim 4 told law enforcement officers that they applied because their family had financial issues.  Once Victim 4 provided this information, the Closer informed Victim 4 that they had been "approved."  The Closer then asked Victim 4 how much they would like to apply for from the fund.  Victim 4 applied for $80,000, which Victim 4 believed would cost $800 in fees.  Victim 4 estimates they sent approximately $50,000 in seed money to obtain money from the fictitious fund.  Law enforcement's review of withdrawals from Victim 4's bank statement evidenced that approximately $46,421.24 was sent to members of the AFG.

32.     Victim 4 provided copies of records they kept with parcel mailing labels.  One of the FedEx packages with a certain tracking number was signed for by "O. AKINYEMI" on December 20, 2018.

**VI.    Victim 5**

33.     Pursuant to a search warrant, your affiant reviewed **AKINYEMI**'s cellular phones. Your affiant observed a photograph depicting a USPS receipt for a money order and Priority Mail Express delivery from Missouri to Hyattsville, Maryland, on April 24, 2019, with a certain tracking number.  Your affiant also viewed an image of a USPS label addressed from an individual in Missouri to "Paddy Linkin" at Akinyemi's Current Residence.  Your affiant believes that the images were sent to **AKINYEMI** by a Closer in the AFG to notify **AKINYEMI** to expect a parcel containing a money order.

34.     On April 30, 2019, law enforcement interviewed Victim 5 regarding this parcel. Victim 5 explained that they were contacted by whom they believed to be a long-term friend regarding a grant of $100,000 the friend had allegedly received from the Community Financial Agency.  The friend—whom your affiant believes was an Originator—stated that Victim 5 should apply for the grant and gave Victim 5 the contact information for an "Agent Bishop Lynne"—a

Closer—who worked for the "Community Financial Agency." Bishop Lynne advised Victim 5 to

send $1,000 via USPS Priority Mail Express to Akinyemi's Current Residence. According to

Victim 5, in exchange for the $1,000, Victim 5 was to receive a $100,000 grant from the

Community Financial Agency. Law enforcement seized the package sent by Victim 5 while in

transit and obtained consent from Victim 5 to search the Priority Mail Express parcel. The package

contained a manila envelope and a white envelope with ten $100 bills (totaling $1,000), as

described by Victim 5.

## VII.    <u>Additional Victims</u>

35.    Based on a review of historical UPS, FedEx, and USPS parcels that were sent to

**AKINYEMI** at Akinyemi's Current Residence and an apartment unit in Hyattsville, Maryland,

where **AKINYEMI** previously resided until March 11, 2019 ("Akinyemi's Previous Residence"),[2]

law enforcement was able to identify additional individuals who sent money to the AFG:

> a.    Victim 6 of Pennsylvania sent $80,000 to Akinyemi's Current Residence.
> Approximately three years ago, Victim 6 received a phone call from an
> individual claiming to be Victim 6's cousin. The alleged cousin informed
> Victim 6 that the cousin received approximately $70,000 from an "Agent
> Ella Witton" after providing said "Agent" with $500. The alleged cousin
> informed Victim 6 that they too could earn money this way. Victim 6 was
> subsequently contacted by an "Agent Ella Witton." Over the next three
> years, Victim 6 sent approximately $80,000 to unknown individuals for
> varying reasons, including purported family tragedies. Victim 6 used the
> mobile phone apps Google Hangouts and Facebook Messenger to
> communicate with "Agent Ella Witton." Additionally, Victim 6 received
> checks in the mail from "Agent Ella Witton" and was asked to cash said
> checks and then forward the cash from these checks to different addresses
> provided by the "Agent." Victim 6 stated that on one occasion they sent
> "Agent Ella Witton" approximately $6,000 based on checks sent to them.
> Victim 6 subsequently learned from their bank that the checks were
> fraudulent. Victim 6 also attempted to send jewelry to "Agent Ella Witton,"

---

[2] Based on your affiant's review of the lease agreement, **AKINYEMI** and his close relative were
lessees at an apartment complex in Landover, Maryland, from March 1, 2018 to February 28, 2019.
The United States Postal Service was provided a request to forward all mail for the family with
the last name **AKINYEMI** on March 11, 2019.

at Akinyemi's Current Residence in March 2019. However, this parcel was returned.

b.    Victim 7 of Arizona sent approximately $10,000 to the AFG. Victim 7 is working with the Arizona Department of Economic Security Adult Protection Services based on their battles with dementia and corresponding vulnerable status. Victim 7 states that on one occasion they sent $900 to $1,000 for the purpose of supporting a sick relative in Pennsylvania. In addition, Victim 7 was told by an unknown individual on Facebook that if Victim 7 sent gift cards to the AFG, Victim 7 would get a check from Publisher's Clearing House. Victim 7 made numerous withdrawals from their bank account and sent multiple packages to "Paddy Linkin."

c.    Victim 8 of Ohio sent $2,000 to Akinyemi's Current Residence. Law enforcement interviewed Victim 8 who stated that they received an unsolicited message via the Facebook Messenger application which appeared to originate from an account used by their friend—an Originator. Victim 8 received a message from the "Federal Government's Grant Assistance, Development Financial Compensation" that offered Victim 8 $150,000 in financial assistance. When Victim 8 responded, they were instructed to send $2,000 to Akinyemi's Current Residence for taxation and processing purposes. Your affiant reviewed the FedEx receipt that Victim 8 received when they sent the $2,000 to the AFG. This parcel was addressed to "Paddy Linkin" at Akinyemi's Current Residence. After sending the package to Akinyemi's Current Residence, Victim 8 discussed the unsolicited grant message with the real individual whom the Originator impersonated. Victim 8 subsequently learned that the message did not come from the real friend. During Victim 8's communication with the AFG, Victim 8 was provided with copies of certificates that contained seals purporting to be from various United States government agencies that appeared to be official in nature.

d.    Victim 9 of South Carolina stated that they were contacted by an individual Victim 9 believed to be a trusted friend from church on Facebook Messenger—an Originator. The individual informed Victim 9 of a United States government grant that Victim 9 was eligible for if Victim 9 paid taxes and custom fees. Victim 9 stated that they were instructed by a different individual (a Closer) to procure Apple iTunes cards in the amount of $1,500 at a local store and send pictures of the cards' unique numbers. Victim 9 stated that they bought three $500 iTunes cards in June 2018 and sent the Closer a picture of the cards as requested. The Closer told Victim 9 that additional fees were required to release the grant money. Victim 9 explained that they retrieved $4,000 from their Roth IRA and sent the cash via UPS to an address in Texas. After sending the $4,000 in cash, Victim 9 was contacted again by the Closer who stated additional funds were necessary and to send an additional $4,800. Victim 9 again retrieved funds from their Roth IRA and sent $4,800 in cash via UPS to Akinyemi's

Previous Residence to an individual named "Flex." In addition, your affiant has reviewed UPS records that show a package from Victim 9 to Akinyemi's Previous Residence on July 6, 2018. The following month, Victim 9 was asked to provide an additional $15,000, which Victim 9 did not send. Victim 9's daughter subsequently contacted the real friend from church who explained that they did not contact Victim 9 on Facebook Messenger and had no knowledge of the scheme.

e.      Victim 10 of New York sent money to Akinyemi's Previous Residence and Akinyemi's Current Residence. Victim 10 stated that they were contacted by someone via text message and informed they were the winner of $1,000,000. Victim 10 was further told that they would need to send $200 to claim the prize. After sending the money, Victim 10 was subsequently told that the deadline was missed and that now Victim 10 had to provide $5,000. Victim 10 sent money via Western Union and other money remitting systems, cash via UPS and FedEx, and gift cards for Amazon and iTunes. Victim 10 sent money to addresses in multiple states and provided the law enforcement officers with some retained UPS receipts. Two of these receipts listed a "Joseph Kadin" at Akinyemi's Previous Residence and "Patty Linkin" at Akinyemi's Current Residence as the recipients.

f.      Victim 11 was contacted on Facebook Messenger by someone they believed to be an old high school friend. Your affiant believes this individual was an Originator. The Originator informed Victim 11 that Victim 11 had appeared on a Publisher's Clearing House winner list (similar to the scheme perpetrated with Victim 2) and that Victim 11 needed to send money to pay fees and taxes on the winnings in order to receive the prize. Victim 11 was redirected to a "Bobby McLemore" (a Closer) who claimed to be a representative of Publisher's Clearing House and was assigned to assist Victim 11 in claiming their "prize money." Victim 11 provided law enforcement with the Facebook account information for "Bobby McLemore," which was used by the Closer. Your affiant observed the following message displayed by Facebook Messenger in the upper right corner of the screen: "Logged in using a phone number from Nigeria / Account was recently created." Based on your affiant's knowledge of the case as well as discussions on **AKINYEMI**'s phone that your affiant has reviewed, the individual or individuals operating the "Bobby McLemore" account are members of the AFG based in Nigeria. Victim 11 stated that they had sent approximately $30,000 to the AFG to claim her winnings. After Victim 11 realized they were being scammed, they proceeded to block the "Bobby McLemore" account on Facebook Messenger. Following this, a member of the AFG emailed Victim 11 at their email address. The unknown AFG member claimed to be "Bobby McLemore" and used a certain email address pretending to be from Publisher's Clearing House. Victim 11 provided copies of these emails to law enforcement. In the email chain, the Closer informed Victim 11 that their prize money was now available. When Victim 11 inquired how much upfront money would be

required to claim the prize, the Closer stated that it would require $10,000. The Closer also asked Victim 11 to unblock the "Bobby McLemore" account on Facebook Messenger. In response, Victim 11 informed the Closer that they would provide the $10,000 only if they were allowed to pay after the prize money was delivered. Your affiant reviewed UPS shipment receipts provided by Victim 11. One receipt showed a parcel being sent from Victim 11 to Akinyemi's Previous Residence in July 2018 and two receipts showed parcels being sent from Victim 11 to Akinyemi's Previous Residence in August of 2018. The July 2018 parcel was sent to "Flex" at Akinyemi's Previous Residence.

g.   Victim 12 stated that they were the victim of a social media fraud scheme and had been taken advantage of for approximately three years. Victim 12 stated that they were initially contacted by an individual they knew to be a respected community member. Your affiant believes this individual was an Originator. Victim 12 stated that they had been receiving and then sending monies to various individuals located in Texas and Nigeria and previously used USPS and UPS to send packages containing gift cards. Victim 12 said the communication with the various individuals was via telephone, Facebook Messenger, text messages, and the Google hangouts application. In total, Victim 12 stated they had been defrauded of approximately $40,000. Victim 12 also stated that they would receive monetary instruments, such as personal checks or cashier's checks, from unknown people both in the United States and Canada. Your affiant is aware that perpetrators of fraud schemes will sometimes have their victims forward money to other victims—who, in turn, forward the money to members of the criminal organization. Your affiant knows that layering victims is an effort to avoid law enforcement detection by insulating direct involvement between the person who initially sends the money and the person who ultimately ends up with the money. Victim 12 would cash the checks and purchase Apple gift cards. Victim 12 would then take the unique codes and send them to individuals such as "Jay Flex" in Maryland, who they were told was in charge of the Baltimore area. As noted above, "Flex" is a known alias for **AKINYEMI**. Victim 12 provided law enforcement officers with some of the parcel mailing receipts, at least one of which was sent to Akinyemi's Previous Residence.

h.   Victim 13 of North Carolina sent $10,000 to Akinyemi's Previous Residence. Victim 13 stated that in July 2018 they were contacted on Facebook by someone named "Johanna Smith" who said that she worked for Health and Human Services ("HHS"). Your affiant believes this individual was a Closer. The Closer told Victim 13 that Victim 13 would receive $300,000, but Victim 13 would need to first send $1,600 to receive the money. Victim 13 was instructed to purchase gift cards and send the unique codes to the Closer. Victim 13 estimates that they sent hundreds of Amazon, Apple, and other gift cards over the next year, totaling $72,680. Your affiant's review of documents provided by Victim 13 revealed at least

$48,000 dollars in gift cards.  The documents also showed a note handwritten by Victim 13 that shows Akinyemi's Previous Residence, a FedEx receipt for a parcel destined for "Paddy Linkin" at Akinyemi's Current Residence on March 25, 2019, and three UPS receipts from March 2019 for shipments to an "Anna Marcos" at Akinyemi's Previous Residence.  Victim 13 also sent money via Walmart and Western Union to a "Anna Marcos" at Akinyemi's Previous Residence as well as addresses in Nigeria.  Victim 13 stated that the total amount they sent via Western Union and Walmart was an additional $14,115.07.  Victim 13 stated that they sent this money from their retirement savings and took out a $25,000 mortgage out on their house.

## VIII.   AKINYEMI's Communications with Members of the AFG

36.     As mentioned above, your affiant has reviewed the contents of two of **AKINYEMI**'s cellular phones pursuant to a federal search warrant.

37.     Your affiant observed the following photograph depicting a chat conversation with a victim:



Your affiant believes that **AKINYEMI** received this message from a member of the AFG who had in turn received it from a victim of the fraud scheme.  When the victim states, "I did what… Not to sign the money order and put inside a magazine," your affiant believes that the victim was instructed by the AFG not to sign a money order in order for it to remain payable to whomever **AKINYEMI** chose.  If the victim were to identify a lottery or sweepstakes on the money order, then the bank institution or business willing to cash the money order might be suspicious of the transaction.  In addition, as discussed above with Victim 1, your affiant knows that the AFG

instructed victims to hide monetary instruments inside objects so that they would not be discovered and seized by the carriers or law enforcement.

38.     Your affiant also observed a photograph depicting the following text by another victim:



Like above, your affiant believes that this message was forwarded to **AKINYEMI** from a member of the AFG who in turn received the message from a victim.  Your affiant is aware that individuals engaging in such fraud schemes often add a romantic element to their scheme as they prey on elderly individuals who may be lonely and seeking a form of companionship.  The use of "Ok baby" suggests the victim believes that the Closer is someone they can trust.  When the writer says, "My concern is the unsigned 1000.00 money order. If it was taken by UPS then I'm really fucked," your affiant believes that if the victim thought a $1,000 money order was intercepted by UPS or law enforcement and the victim had no way of offering proof that the money belonged to them, the victim would not be able to recover the money.  Your affiant knows that victims in these fraud schemes often are tricked into aligning themselves with the fraud groups and view law enforcement as an enemy or barrier for the victims to receiving a prize to which they believe they are entitled.  By having the $1,000 money order seized, the victim—in their mind—will be unable to provide the organization with the necessary capital or fees in order to release the greater sum of money which they have been convinced they are entitled to by the fraud group.

39.    Your affiant observed a third photograph depicting the following text:



> Because tracking numbers do
> not function under first class
> mail. They recommend that you
> call this paddy Linden and see if
> he received the package.
> Sometimes UPS forgets to sign
> in delivery dates and times

Your affiant believes that this was written by a victim and forwarded by a member of the AFG to

**AKINYEMI**.  Your affiant believes that "paddy Linden" is a typographical error in lieu of "Paddy

Linkin" and that the victim had attempted to locate a parcel containing money that the AFG stated

had not been delivered.  Your affiant believes that a member of the AFG—a Closer—informed the

victim that the package the victim had sent never arrived and that the victim took it upon

themselves to try and locate the missing money.  The victim in turn asked the Closer to speak with

"Paddy Linkin" in order to determine if the package the victim had sent was received.

40.    Lastly, your affiant observed a photograph depicting a sheet of paper containing

dollar amounts, names, and the text: "Money Collected today," "Total amount," "Out Standing,"

and "Money Collected."   Your affiant is aware that individuals who participate in criminal

activities involving money often retain ledgers of their financial transactions.  Your affiant is

unaware of any legitimate work that **AKINYEMI** is engaged in which requires him to collect

money.  In addition, the document—which your affiant believes is a ledger—contains numbers

that are then divided by "350," resulting in a dollar amount.  Your affiant is aware that the exchange

rate between the United States Dollar and the Nigerian Naira was approximately 360:1 in April

2019.  Accordingly, your affiant believes that **AKINYEMI** was calculating the money owed to members of the AFG in Nigeria.

    41.    Your affiant also observed conversations between **AKINYEMI** and individuals, as discussed above.  Your affiant reviewed a transcript of a WhatsApp conversation between **AKINYEMI** and member of the AFG on April 24, 2019:

| | |
|---|---|
| **AKINYEMI**: | Blood<br>Naso<br>Use paddy |
| **Co-Conspirator B**: | Bro |
| **AKINYEMI**: | But fedex only ok |
| **Co-Conspirator B**: | Ok bros<br>Thanks |
| **AKINYEMI**: | You welcome |
| **Co-Conspirator B**: | One small money suppose enter tomoro |
| **AKINYEMI**: | Don't chat me on that line again ok<br>Cool |
| **Co-Conspirator B**: | D 27k says on money |
| **AKINYEMI**: | Monday |
| **Co-Conspirator B**: | Ok<br>IT will be mailed out on Monday |

    42.    Your affiant believes that during this WhatsApp conversation, **AKINYEMI** is instructing **Co-Conspirator B** to send him $27,000 on Monday via FedEx utilizing his alias "Paddy Linkin."  Your affiant also is aware that criminals often inform members of their criminal organization to contact them or not contact them in certain manners to avoid law enforcement detection. When **AKINYEMI** writes, "Don't chat me on that line again ok," your affiant believes

**AKINYEMI** is warning **Co-Conspirator B** that the number being utilized should be avoided in the future.

## VIII.   AKINYEMI's Statements to Law Enforcement

43.     On April 25, 2019, HSI and the Prince George's County Police Department executed a search warrant authorized for Akinyemi's Current Residence.  **AKINYEMI** and two of his close relatives were present during execution of the search warrant.

44.     Law enforcement interviewed **AKINYEMI**, who waived his *Miranda* rights freely and voluntarily.  **AKINYEMI** confirmed that he received packages from individuals throughout the country.  **AKINYEMI** proceeded to describe the scheme in which he was involved. Individuals in Nigeria would inform **AKINYEMI** regarding the packages that would be sent to him, including providing the amounts in the packages and tracking numbers.  **AKINYEMI** stated that the individuals in Nigeria were responsible for soliciting the victims to send the money to **AKINYEMI**.  **AKINYEMI** stated that he had received approximately $80,000 in the mail in the year prior to his interview, and **AKINYEMI** was expecting numerous parcels related to this scheme to be delivered in the next several days.

**Conclusion**

45.     Based on the foregoing facts, I respectfully submit that there is probable cause to
believe that **AKINYEMI** committed mail fraud, attempted mail fraud, and mail and wire fraud
conspiracy, in violation of 18 U.S.C. §§ 1341 and 1349, from approximately July 10, 2018, to
April 29, 2019.


*Aaron Klein*
Special Agent Aaron Klein
Homeland Security Investigations


Affidavit submitted by email and attested to me as true and accurate by telephone consistent with
Fed. R. Crim. P. 4.1 and 4(d) this _____31st_____ day of March, 2021.


_____
Honorable Gina L. Simms
United States Magistrate Judge

27